IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: In the Matter of the<br><br>Tracking of a DEA-Owned Cummins Allison Brand money Counter (The Subject Device).<br><br>Search and Seizure of a DEA-Owned Cummins Allison Brand money Counter (The Subject Device). | Case No. 23-MJ-562-JFJ<br>Case No. 23-MJ-563-JFJ |

## AMENDED OPINION AND ORDER[1]

The United States applied for the following warrants: (1) a warrant to track a money counter for thirty days pursuant to Federal Rule of Criminal Procedure 41(e)(2)(C) ("Tracking Warrant") (ECF No. 1, Case No. 23-MJ-563-JFJ); and (2) a warrant to search for and seize currency-related data from a money counter for thirty days pursuant to Rule 41(e)(2)(A) ("Search Warrant") (ECF No. 1, Case No. 23-MJ-562-JFJ). If granted, the United States would track and seize evidence from the money counter via a surreptitiously installed device that (1) transmits GPS location tracking information to law enforcement officers on a periodic basis, and (2) transmits currency-related data to law enforcement officers upon use of the money counter.[2]

---

[1] This Opinion and Order was originally filed under seal on October 18, 2023. It has been amended to remove any sensitive information prior to public release. The name of the officer submitting an affidavit in support of the warrants at issue has been removed and replaced with "Officer." The name of the suspect at issue in the subject warrant applications has been removed and replaced with "Suspect," and other identifying information has been removed. The serial number on the money counter at issue has also been removed.

[2] The location information and currency-related data from the money counter would be transmitted directly to law enforcement, rather than to any electronic communications service or remote computing service governed by 18 U.S.C. § 2703(c). The United States is therefore not requesting warrants pursuant to 18 U.S.C. § 2703(c)(1)(A).

The Court denied both applications.³ The United States requested that the Court provide a written statement of reasons for denying the applications for purposes of appeal. For the benefit of any reviewing judge, the Court issues the following Opinion and Order explaining its reasons for denial.⁴

I.      **Facts in Affidavit**

Both applications are supported by affidavits signed by a DEA Task Force Officer ("Officer"). Officer swore to the following facts regarding the money counter. The object listed in both case citations is a DEA-owned Cummins Allison Brand Money Counter ("Money Counter"). The Money Counter is a commercially available product designed to count any quantity of paper currency.

Officers altered the Money Counter in two ways. First, they equipped the Money Counter with a GPS tracking device to monitor its movements and physical location. The GPS tracking device in the Money Counter "periodically transmits the location information data to the government," and it "reports its GPS location when it is plugged into a power source." Officer Aff. ¶ 9. Second, they equipped the Money Counter "to allow for the search and seizure of stored currency count information after a currency count report is created in the normal course of use." *Id.* ¶ 10. When paper currency is placed into the Money Counter, the currency is scanned and "the currency count information is recorded and the denomination, unit amount, and total value is visually displayed to the user." *Id.* ¶ 11a. The Money Counter also captures serial numbers of the counted paper currency. *Id.* The currency-count data and serial numbers of bills would be

---

³ The Court also denied prior versions of these applications submitted August 18, 2023. This Opinion and Order addresses only the most recent applications submitted August 29, 2023. The Court filed the most recent applications and proposed warrants in the above-captioned case numbers under seal.

⁴ The United States did not request to file a brief in support of its applications, and the Court did not require one. In reaching its decision, the Court has considered the affidavits, authority provided by the United States during the application process, and authority identified by the Court.

transmitted to "a law enforcement tracking system via the same means used to transmit GPS location information." *Id.* ¶ 10.

Officer swore to the following facts regarding probable cause. In July 2023, the DEA became aware of a DTO "responsible for laundering drug proceeds via large bulk currency pickups throughout the United States" and that a "bulk cash delivery . . . was expected to occur in the Tulsa, Oklahoma-area in the near future." *Id.* ¶ 14. During recorded telephone calls with a confidential source ("CS"), an individual informed the CS that he was in the Tulsa area and "was responsible for delivering a large amount of bulk U.S. currency to the CS for the DTO" and that he drives a particular vehicle. *Id.* ¶ 15. Pursuant to subpoena, officers identified the telephone number on these calls as being subscribed to the suspect ("Suspect") at a Tulsa address. Officers obtained a warrant to ping Suspect's phone, drove to its location, and observed a vehicle matching the CS' description with a license tag registered to Suspect. In July and August 2023, the DEA used the CS to conduct two controlled money pickups from Suspect in Tulsa. Officers physically observed Suspect on these occasions. The CS picked up a total amount of over $100,000 from Suspect during the controlled money pickups. Officers received information from another agent that he had identified Suspect to be a money launderer for the DTO.

Officer swore to the following facts as to how the Money Counter will be injected into the suspected criminal activity and then used to collect evidence. The Money Counter will be delivered by the CS "if and when another drug money pickup is scheduled by [Suspect]." *Id.* ¶ 32. It will be introduced "with the understanding that that the DTO will be using it to count future amounts of drug proceeds for delivery to the CS." *Id.* The CS intends to state that he/she is providing it because past deliveries of drug proceeds contained counterfeit money, and the Money Counter must be used in the future to avoid this. Officer described these as "anticipatory" warrants that will only be utilized "once the following triggering event takes place: a CS makes delivery of the [Money Counter] to [Suspect] or a representative of the DTO sent on his behalf with the understanding that

the [Money Counter] will be used to count money by the DTO." *Id.* ¶ 33.  Officer believes, upon that event, "probable cause will [then] exist to track the GPS location of the [Money Counter] and to search and seize currency count information." *Id.*

If the warrants are granted, "there will be periodic monitoring of the GPS tracking device . . . for a period of 30 days beginning on the date the [Money Counter] is provided to [Suspect]." *Id.* ¶ 35.  The GPS tracking device "may produce signals from inside private residences not open to the public or to visual surveillance and may move within the Northern District of Oklahoma, or outside the District's boundaries." *Id.*  If granted, officers will collect currency-count information generated by the Money Counter for a period of 30 days. *Id.* ¶ 39.  The Money Counter will also collect currency-count information from "inside private residences not open to the public or visual surveillance and may move within the Northern District of Oklahoma, or outside the District's boundaries." *Id.* ¶ 36.

## II.     Legal Standards

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The Fourth Amendment protects citizens against unreasonable searches and seizures by the government, and it "creates two requirements for all search warrants." *United States v. Mesa-Rincon*, 911 F.2d 1433, 1436 (10th Cir. 1990).  First, there must be "probable cause supported by an oath or affirmation." *Id.*  Second, there must be "a particular description of the place, persons, and things to be searched and seized." *Id.*

Relevant to the current applications, the Federal Rules of Criminal Procedure authorize magistrate judges to issue search and seizure warrants and tracking warrants.  Fed. R. Crim. P. 41(e)(2)(A) (search warrant), (C) (tracking warrant).  Each type of warrant has distinct venue,

4

content, and execution requirements. *See* Fed. R. Crim. P. 41(b) (venue), (e)(2) (content), and (f) (execution). After receiving an affidavit or other information, a magistrate judge with proper authority under Rule 41(b) "must issue the warrant if there is probable cause to search for and seize a person or property or to install and use a tracking device." Fed. R. Crim. P. 41(d).[5]

## III. Analysis

### A. Tracking Warrant – Request to Track Money Counter for Thirty Days Via Installed GPS Tracking Device

The Court denied the application for tracking warrant because (1) the affidavit fails to establish probable cause for a conventional tracking warrant; and (2) the affidavit fails to establish probable cause for an anticipatory tracking warrant.

#### 1. Conventional Tracking Warrant

To show probable cause for a conventional tracking warrant, the affidavit must establish "a nexus between [the object tracked] and suspected criminal activity." *United States v. Jaques*, No. CR-19-372-F, 2020 WL 7327316, at *1 (W.D. Okla. Dec. 11, 2020). For example, an affidavit established a nexus between a vehicle to be tracked and suspected distribution of controlled substances where officers had: (1) observed the suspect using the vehicle to deliver drugs to a confidential informant, and (2) observed the suspect driving the vehicle two days before obtaining the tracking warrant. *Id.* at *2. *See also United States v. Morris*, No. 20-CR-100-RJA-JJM, 2022 WL 1651408, at *12 (W.D.N.Y. Apr. 12, 2022), *report and recommendation adopted*, No. 20-CR-100-A, 2022 WL 1645261 (W.D.N.Y. May 24, 2022) (finding probable cause existed for tracking warrant where there was a nexus between a vehicle and suspected bank robberies based on, *inter alia*, the suspects' "recent use of the vehicle to scout additional credit unions").

---

[5] The advisory committee's notes to Rule 41 indicate the standard applicable to tracking warrants is "unresolved." Fed. R. Crim. P. 41 advisory committee's notes to 2006 amendments. The United States' application references a probable cause standard, and the Court is not aware of case law applying anything less than a probable cause standard to tracking warrants. The Court therefore applies a probable cause standard to both applications.

Here, the affidavit fails to establish a current nexus between the object to be tracked, *i.e.*, the Money Counter, and Suspect's suspected criminal activity of laundering drug proceeds. The affidavit establishes probable cause of Suspect's involvement as a money handler in a DTO operating in this district, and officers recently observed two controlled deliveries of suspected drug proceeds by Suspect to a CS. But there is no probable cause that the Money Counter is connected to such criminal activity. Unlike a vehicle observed by officers in use by a suspect during controlled drug buys or a vehicle observed in use by a suspect to scout future robbery locations, the Money Counter has not been used by any suspect. The Money Counter is an object possessed by law enforcement, which law enforcement desires to inject into criminal activity for the purpose of surreptitiously tracking its location via an installed GPS tracking device. There is no current nexus between the Money Counter and suspected criminal activity that establishes probable cause to track its location.

### 2. "Anticipatory" Tracking Warrant

An anticipatory warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (cleaned up). "Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time – a so-called 'triggering condition.'" *Id*. The conditions precedent to the execution of an anticipatory warrant are "integral to its validity." *United States v. Serrano*, 209 F. App'x 796, 801 (10th Cir. 2006) (cleaned up). The conditions precedent ensure against "premature execution of the warrant" and allow for "judicial control over the probable cause determination and over the circumstances of the warrant's execution." *Id.* (cleaned up).

Anticipatory warrants generally require a magistrate judge to find three elements: "(1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed." *Grubbs*, 547 U.S. at 96. For probable cause to exist at

the time of issuance, a magistrate judge must be satisfied that: (1) if the triggering condition occurs, there is a fair probability that contraband or evidence of a crime will be found in a particular place, and (2) there is probable cause to believe the triggering condition will occur. *Id.* at 96-97. "The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination." *Id.* at 97.

In *Grubbs*, the triggering condition for search of a residence was controlled delivery of contraband by a U.S. postal inspector – namely, a video containing child pornography – to the residence to be searched. The Court held that "the occurrence of the triggering condition – successful delivery of the videotape to Grubbs' residence – would plainly establish probable cause for the search." *Id.* "In addition, the affidavit established probable cause to believe the triggering condition would be satisfied." *Id.* The Court reasoned that, "although it is possible that Grubbs could have refused delivery of the [illegal] videotape *he had ordered*, that was unlikely." *Id.* (emphasis added). The magistrate judge therefore had a substantial basis for concluding that probable cause existed for an anticipatory warrant. *Id.*

In *United States v. Serrano*, the Tenth Circuit explained that "[a]n anticipatory warrant predicated on too many uncertain future events may fail to sufficiently establish probable cause." *Serrano*, 209 F. App'x at 800. In that case, the defendant had contacted a CS to arrange for the sale of three kilograms of cocaine at a confirmed price of $17,000 each, and the defendant gave a specific address where the sale would take place. *Id.* The "triggering event" for search of the defendant's residence was the CS's "confirmation" to officers that the expected event, *i.e.*, the cocaine sale, had in fact occurred. *Id.* The court held that the magistrate judge properly found probable cause at the time of issuance, because "it was indeed probable that within an indefinite, but short, time [the] CS would view the cocaine at the location identified in the warrant and signal the agents who would, upon entry, find contraband." *Id.*

Here, the United States relies on triggering events to create probable cause at a time after issuance of the warrant but before tracking begins.[6] Specifically, the Money Counter will only be tracked if and when: (1) Suspect sets up another money pickup; and (2) a CS makes a delivery of the Money Counter to Suspect, or a representative of the DTO sent on his behalf, "with the understanding that the [Money Counter] will be used to count money by the DTO." Officer Aff. ¶¶ 32-33.

The Court denies the request for an "anticipatory" tracking warrant. First, the Court is not aware of authority for issuing a tracking warrant based on anticipatory probable cause. The Supreme Court and Tenth Circuit cases discussing "anticipatory" warrants do so in the context of search and seizures to be conducted at a discrete time, rather than to commence ongoing tracking of an object. The standard forms published by the Administrative Office of the U.S. Courts for tracking warrant applications ("AO 102") and tracking warrants ("AO 104") require a current nexus to criminal activity at the time of issuance. The application requires a law enforcement officer or attorney for the government to swear that he has "reason to believe that the person, property, or object described above *has been and likely will continue to be* involved in one or more violations" of law. AO 102 (emphasis added). Similarly, the warrant requires the judge to make a finding that "there is reason to believe that the person, property, or object described above *has been involved in and likely will continue to be involved in* the criminal activity identified in the application." AO 104 (emphasis added). When questioned about this language, the United States omitted the "has been involved" language on both forms to read "the object described above is likely to be involved" in criminal activity. The United States did not provide legal authority for this alteration or an example where anticipatory probable cause was used to support a tracking warrant. Standard forms are not

---

[6] After the Court rejected a prior version of the warrant, the United States added these triggering conditions in attempt to create the necessary nexus between the Money Counter and the suspected drug activity.

conclusive as to legal standards, but the Court is not persuaded to alter the standard language as requested in this case.

Second, assuming anticipatory warrant principles extend to tracking warrants, the affidavit still fails to establish probable cause. The Court finds the Money Counter will not have a sufficient nexus to suspected criminal activity upon the triggering event described in the affidavit – namely, delivery to and acceptance of the Money Counter by Suspect or another member of the DTO. Unlike delivery of a package containing known contraband, the delivery here is of an "innocent" object to a suspected criminal. The suspected criminal is not currently aware of the Money Counter, did not order the Money Counter, has not made any arrangements involving the Money Counter, and may or may not decide to use the Money Counter to further activities of the DTO at the suggestion of the CS. The object could essentially be anything to which officers can attach a GPS tracking device, provide to a suspected criminal, and encourage him to use in furtherance of criminal activity. The mere delivery of an "innocent object" that has no connection to the suspect is far afield from the triggering conditions of delivery of an illegal video ordered by a suspect, such as in *Grubbs*, or viewing cocaine during a controlled drug deal set up by the suspect, as in *Serrano*. The Court finds probable cause will not arise to track the Money Counter based solely on the Money Counter's delivery to and acceptance by Suspect or another member of the DTO. *See Grubbs*, 547 U.S. at 96-97.

The Court also finds it overly speculative that the triggering events will occur. The triggering events are that Suspect must set up another money pick up and then accept delivery of the Money Counter with the "understanding" that it will be used to count money by the DTO. Officer Aff. ¶ 33. However, there is no currently scheduled money pickup and no indication of when the next money pickup may take place. Members of the DTO did not order a money counter or express any desire for a money counter, and the CS must successfully create the subjective "understanding" that it should be used to count drug proceeds. This is another uncertain future

9

event. It seems equally possible this explanation could cause Suspect to question the CS's intentions and veracity, such that the Money Counter never gets used after delivery. The contingencies presented here are far more speculative than those approved in *Serrano*, where the suspect had already coordinated a drug sale to the CS for the specific purpose of selling three kilograms of cocaine for a set price at his residence. In contrast to *Serrano*, the Court cannot conclude that it is "probable that within an indefinite, but short, time" the Money Counter's location will reveal evidence of criminal activity. *See Serrano*, 209 Fed. App'x at 800. The Court finds there is not probable cause "to believe the triggering conditions will occur." *See Grubbs*, 547 U.S. at 96-97.

The Court acknowledges that GPS tracking of the Money Counter does not reveal the intimacies of a person's life, as other forms of GPS tracking might. *See generally United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring) ("GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations."). But the United States is requesting a warrant authorizing the actions of law enforcement officers, which requires a showing of probable cause.[7] In the next application, law enforcement officers may seek to "inject" and then track another type of object that reveals far more private information than the Money Counter.

### B. Search Warrant – Request to Search and Seize Evidence from Money Counter for Thirty Days[8]

The Court denied the application for search warrant because (1) the affidavit fails to establish

---

[7] The Court need not address whether the requested actions constitute searches and seizures and therefore may be conducted without a warrant. *See generally Jones*, 565 U.S. at 404-13 (addressing whether warrantless installation of GPS tracking device to privately owned vehicle was a "search" subject to the Fourth Amendment's protections and explaining Supreme Court cases addressing whether warrantless installation of "beepers" into other types of devices constituted searches).

[8] The United States originally requested one tracking warrant for the seizure of location information and currency-count information from the installed device. The Court denied that application because, in the case of seizing currency-count information, the Money Counter does not satisfy the definition of a "tracking device." *See* 18 U.S.C. § 3117(b) (defining "tracking device" as an "electronic or mechanical device which permits the *tracking of movement* of a person or object") (emphasis added).

probable cause for a conventional search warrant; (2) the affidavit fails to establish probable cause for an anticipatory search warrant; (3) the proposed warrant fails to comply with Rule 41's requirements; and (4) the Tenth Circuit's decision in *United States* v. *Mesa-Rincon*, 911 F.2d 1433 (10th Cir. 1990), does not address or authorize the type of warrant requested here.

### 1. Conventional Search Warrant

"An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Barajas*, 710 F.3d 1102, 1108 (10th Cir. 2013) (cleaned up). Conventional search warrants require probable cause to believe contraband is currently located at the place to be searched and will remain there when the warrant is executed. *Grubbs*, 547 U.S. at 95 (explaining that, in typical case "where the police seek permission to search a house for an item they believe is already located there, the magistrate's determination that there is probable cause for the search amounts to a prediction that the item will still be there when the warrant is executed"). In this case, the property to be searched is the Money Counter, and the items to be seized are "currency-count information" recorded on the Money Counter for a prospective thirty-day period.

As explained above, the Money Counter has at all times remained in the possession of law enforcement. The Money Counter has not yet been used in any investigation or otherwise been in the possession of any person suspected of criminal activity. The United States has not shown probable cause that evidence of any crime is currently located on the Money Counter, and the warrant may not issue as a conventional search warrant.

### 2. Anticipatory Search Warrant

Although search warrants may be supported by anticipatory probable cause, the Court denies the current application for similar reasons explained above. First, the Money Counter will not have a sufficient nexus to suspected criminal activity upon the triggering event described in the affidavit – namely, acceptance by Suspect or another member of the DTO. Unlike delivery of a package

containing known contraband, the delivery here is of an "innocent" object to a suspected criminal. The suspected criminal is not aware of the Money Counter, did not order the Money Counter, has not made any arrangements involving the Money Counter, and may or may not decide to use the Money Counter to further activities of the DTO at the suggestion of the CS. The object could essentially be anything to which officers can attach a device that seizes and transmits information, provide to a suspected criminal, and then encourage him to use in furtherance of criminal activity. Delivery of an "innocent object" as a basis for probable cause to search and seize is far afield from the triggering conditions of delivery of an illegal video ordered by a suspect, such as in *Grubbs*, or viewing cocaine during a controlled drug deal set up by the suspect, as in *Serrano*. The Court finds there is not "a fair probability that contraband or evidence of a crime will be found" on the Money Counter based simply on the object's delivery to and acceptance by Suspect. *See Grubbs*, 547 U.S. at 96-97.

The Court also finds it overly speculative that the triggering events will occur. The triggering events are that Suspect must set up another money pick up and then accept delivery of the Money Counter with the "understanding" that it will be used to count money by the DTO. Officer Aff. ¶ 33. However, there is no currently scheduled money pickup and no indication of when the next money pickup may take place. Members of the DTO did not order a money counter or express any desire for a money counter, and the CS must successfully create the subjective "understanding" that it should be used to count drug proceeds. This is another uncertain future event. It seems equally possible this explanation could cause Suspect to question the CS's intentions and veracity, such that the Money Counter never gets used by the DTO after its delivery. The contingencies presented here are far more speculative than those approved in *Serrano*, where the suspect had already coordinated a drug sale to the CS for the specific purpose of selling three kilograms of cocaine for a set price at his residence. In contrast to *Serrano*, the Court cannot conclude that it is "probable that within an indefinite, but short, time" the Money Counter will

contain evidence of criminal activity. *See Serrano*, 209 F. App'x at 800. The Court finds there is not probable cause "to believe the triggering conditions will occur." *See Grubbs*, 547 U.S. at 96-97.

Again, the Court acknowledges that evidence seized from the Money Counter is limited to currency-related data. Monitoring and seizing evidence from the Money Counter does not run a risk of capturing intimate or overly private information. Again, however, the United States is requesting a warrant, which requires a showing of probable cause. In the next application, law enforcement officers may seek to "inject" another type of object and then search for and seize far more private information than the information revealed by the Money Counter.

### 3. Rule 41's Requirements

In addition to lacking probable cause, the search warrant application does not comply with Rule 41. First, the application does not explain the basis for venue in this judicial district. Rule 41(b)(1) authorizes a magistrate judge to issue a warrant to search for and seize "a person or property located within the district." Fed. R. Crim. P. 41(b)(1). The requested search warrant would permit the seizure of evidence from the Money Counter regardless of where the data is located at the time of seizure. *See* Officer Aff. ¶ 36 (explaining that Money Counter "may move within the Northern District of Oklahoma, or outside the District's boundaries" when transmitting currency-related data). By its own language, the affidavit would permit seizures of evidence outside this district.[9]

Rule 41(b)(6) permits a magistrate judge in a district where activities related to a crime may have occurred "to use remote access to search electronic storage media and to seize or copy electronically stored information" located outside the district in two unique circumstances: (1) if the district where the information is located has been concealed through technological means; or (2) in

---

[9] This is expressly authorized for a tracking warrant so long as "installation" occurs within the issuing district. *See* Fed. R. Crim. P. 41(b)(4). But the United States does not seek to "track" the object's movement; it seeks to search for and seize evidence from the object.

13

a specific type of computer fraud investigation where "the media are protected computers that have been damaged without authorization and are located in five or more districts." Fed. R. Crim. P. 41(b)(6).  Neither circumstance applies here, and Rule 41(b)(6) does not create venue in this district.

Rule 41(b)(2) authorizes a magistrate judge to issue a search warrant "for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district *before* the warrant is executed." Fed R. Crim. P. 41(b)(2) (emphasis added).  This exception recognizes that "there are inevitable delays" between issuance and execution of a search warrant, and that "when property is in motion, there may be good reason to delay execution until the property comes to rest." *See* Fed. R. Crim. P. 41 advisory committee's notes to 1990 amendments.  Here, the affidavit does not contemplate issuance in this district and inevitable execution in another district where the Money Counter ultimately comes to rest.  The affidavit contemplates continuous searches and seizures for a thirty-day period regardless of where the Money Counter is located.  Rule 41(b)(2) also does not create venue in this district.

Second, the application does not explain the basis for permitting officers to continue seizing evidence outside the fourteen-day deadline for execution of search warrants.  *See* Rule 41(e)(2)(A)(i).  Generally, officers may not return to a location to be searched, *i.e.*, the Money Counter, and continue searching for newly created evidence for an extended period.  But that is what this search warrant would permit for a thirty-day period.

Finally, the proposed form of search warrant would incorrectly state that the property to be searched, *i.e.*, the Money Counter, "now conceals" the property to be seized.  Although this language could be conformed to anticipatory warrant standards consistent with Supreme Court law, the United States did not present a proper form of warrant despite several opportunities to do so.

    4.    **Rule 41 "Surveillance" Warrant**

During the review process, the Court requested authority for issuance of a search warrant to

covertly seize evidence from an object for a prospective thirty-day period.  This seemed akin to surveillance, which generally is not permissible pursuant to a search and seizure warrant signed by a magistrate judge.  The United States provided authority permitting prospective video surveillance under Rule 41.  *See United States v. Mesa-Rincon*, 911 F.2d 1433, 1436 (10th Cir. 1990 (holding that Rule 41 provided district court with authority to issue order authorizing covert interception and recordation of nonverbal conduct in a specified building within district where suspected counterfeiting was taking place for specified period).  In *Mesa-Rincon*, the United States Secret Service applied for an "order to authorize the interception of nonverbal conduct via closed circuit television to be installed by surreptitious entry." *Mesa-Rincon*, 911 F.2d at 1435.  The application was approved by a district judge by written order.  Because the order was not expressly authorized by any statute, such as Title I of the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-20 ("Title I"),[10] the question presented was whether the district judge had authority to authorize the video surveillance.  The Tenth Circuit held the district judge had authority to permit video surveillance under Rule 41.  *Id.* at 1436.  The court reasoned that Rule 41 is sufficiently "flexible" to include within its scope "electronic intrusions" such as video surveillance, *see id.*, and "the fact that [Title I] does not discuss television surveillance is no authority for the proposition that Congress meant to outlaw the practice," *see id.* at 1437.  The Tenth Circuit adopted requirements similar to those required for wiretaps and other forms of government surveillance.  *Id.* at 1437 (setting forth requirements, including elements of minimization and necessity).

*Mesa-Rincon* does not address or clearly authorize the type of search warrant requested here.  *Mesa-Rincon* approved a district judge's order authorizing video surveillance because the United States satisfied a specific set of elements applicable to surveillance warrants.  Here, the United States applied to a magistrate judge for a search and seizure warrant under an ordinary probable-cause

---

[10] Title I was previously known as Title III of the Omnibus Crime Control and Safe Streets Act of 1968. *See United States v. Jackson*, 213 F.3d 1269, 1280 n.1 (10th Cir. 2000).

15

standard and presented a standard search warrant form containing the fourteen-day execution deadline. The application does not attempt to demonstrate the elements set forth in *Mesa-Rincon*, explain why any such elements should be excused or lessened, or explain what procedures should be followed if a magistrate judge executes a "search warrant" akin to the video surveillance warrant authorized in that decision. The Court declines to rely on *Mesa-Rincon* as authority for granting the requested search warrant.

**IV.     Conclusion**

The United States' Application for a Search Warrant (ECF No 1, Case No. 23-MJ-562-JFJ) and Application for a Tracking Warrant (ECF No. 1, Case No. 23-MJ-563-JFJ) were previously DENIED for reasons stated in this Opinion and Order.

**SO ORDERED** the 18th day of October, 2023, as amended this 25th day of March, 2024.[11]

_____<br>
**JODI F. JAYNE, MAGISTRATE JUDGE**<br>
**UNITED STATES DISTRICT COURT**

---

[11] This Amended Opinion and Order is substantively identical to the Opinion and Order entered on October 18, 2023. This amendment does not restart the appeal clock for the United States.